No. 01-675

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 137N

JAY W. RUTHERFORD,

        Plaintiff/Appellant,

    v.

ULTRA SHIELD PRODUCTS INTERNATIONAL, INC., its
successors, assigns, and all other persons, unknown, claiming or
who might claim any right, title, estate, or interest in or lien or
encumbrance upon the real property described in the complaint
adverse to the plaintiff's ownership or any cloud upon plaintiff's title
thereto, whether such claim or possible claim be present or contingent,

        Defendant and Respondent.

SUN MERCHANT GROUP, INC.,

        Third-Party Plaintiff and Respondent,

    v.

JAY W. RUTHERFORD, AMERICAN, BANK and all other persons,
unknown, claiming or who might claim any right, title, estate or interest
in or lien or encumbrance upon the real property described in the plaintiff's
complaint adverse to Sun Merchant Group, Inc.'s ownership, or any cloud
upon Sun Merchant Group, Inc.'s title thereto, whether such claim or possible
claim be present or contingent.

        Third-Party Defendants and Appellant.

APPEAL FROM:     District Court of the Sixth Judicial District,
                  In and for the County of Park,
                  The Honorable Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Patrick N. Dringman, Josephson & Dringman, Big Timber, Montana

        For Respondent:

            Karl Knuchel, Attorney at Law, Livingston, Montana

                      Submitted on Briefs:  February 7, 2002
                                Decided:   June 20, 2002

Filed:

                 _____
                          Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Jay W. Rutherford filed a quiet title action in the Sixth Judicial District Court, Park County, against Ultra Shield Products International, Inc. ("Ultra Shield") seeking to quiet title to certain property in Park County, Montana.  Sun Merchant Group ("Sun Merchant") interpled as a third-party plaintiff to defend its claimed interest in the subject property.  Following a trial, the District Court ruled in favor of Sun Merchant.  Rutherford appeals and we affirm.

¶3    The following issue is dispositive of this appeal:

¶4    Did the District Court err in quieting title to the disputed property in favor of Sun Merchant?

BACKGROUND

¶5    This dispute revolves around two parcels of property in Big Timber, Montana.  On September 30, 1996, Rutherford made a $10,000 down payment toward the property out of his personal funds.  Ultra Shield paid the remainder of the purchase price and took title to the property in its name.  Ultra Shield is a business incorporated in Delaware, with its principal place of business in Rancho Cucamonga, California.  Rutherford was the CEO and President of Ultra Shield at the time of the transaction.  Ultra Shield,

3

however, later suspended Rutherford in September 1998.

¶6    On November 13, 1997, Rutherford took out a mortgage for $75,000 from American Bank of Big Timber ("American Bank").  He used the Big Timber property as collateral for the loan.  Rutherford took out a second mortgage from American Bank around August 19, 1998, for $102,500.  He again used the disputed property as collateral for the loan.  Rutherford claims that he used the proceeds from these loans to repay Ultra Shield for the purchase price of the property.  Rutherford claims to have made all the necessary payments on these loans, but no evidence exists that Rutherford has fully paid off the loans or used other assets to collateralize them.

¶7    Sun Merchant, an investment company incorporated in Florida, purportedly lent Ultra Shield a total of $150,000 in August and September 1998.  On November 19, 1998, Rutherford filed a Complaint to Quiet Title on the two parcels of property against Ultra Shield and any successors or assigns.  On November 23, 1998, and December 4, 1998, in exchange for a release from Sun Merchant's loan and any future claims, Ultra Shield transferred the two parcels of property via quitclaim deeds to Sun Merchant.  Sun Merchant later interpled as a third-party plaintiff to defend its claimed interest in the property.

¶8    On May 22, 2001, the District Court conducted a bench trial. The court issued a judgment quieting title in favor of Sun Merchant.  Rutherford appeals from this judgment.

STANDARD OF REVIEW

4

¶9    Rutherford's claims of resulting and constructive trusts are claims in equity.  *See Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, ¶ 11, 36 P.3d 408, ¶ 11.  Therefore, in reviewing the findings of fact, we decide if the District Court's findings are clearly erroneous, and, in reviewing the conclusions of law, we decide if the court's interpretation of the law is correct.  *See Hansen v. 75 Ranch Co.*, 1998 MT 77, ¶ 20, 288 Mont. 310, ¶ 20, 957 P.2d 32, ¶ 20.

DISCUSSION

¶10    Did the District Court err in quieting title to the disputed property in favor of Sun Merchant?

¶11    Rutherford sought to quiet title based on theories of purchase money resulting trust and constructive trust.  A party must establish a trust "by evidence that is clear, convincing and practically free from doubt."  *Hilliard v. Hilliard* (1992), 255 Mont. 487, 492, 844 P.2d 54, 57.  Sitting in equity empowers us to determine all questions involved in the matter and to do complete justice, including the power to fashion equitable results.  *See Kauffman-Harmon*, ¶ 11.

¶12    The District Court held that Rutherford was not entitled to receive the property, either through a purchase money resulting trust or constructive trust, because he did not have "clean hands."  The doctrine of clean hands provides that "[p]arties must not expect relief in equity, unless they come into court with clean hands."  *See Kauffman-Harmon*, ¶ 19 (citing *In re Marriage of Burner* (1991), 246 Mont. 394, 397, 803 P.2d 1099, 1100).  As the statute states, "[n]o one can take advantage of his own wrong."  Section 1-

5

3-208, MCA. Accordingly, we will not assist a party whose claim originated in the party's wrongdoing, whether the victim of the wrongdoing is the other party or a third party. *See Kauffman-Harmon,* ¶ 19; *Murphy v. Redland* (1978), 178 Mont. 296, 309, 583 P.2d 1049, 1056.

¶13 Rutherford argues that the unclean hands doctrine does not apply because he did not need to make an affirmative declaration that he owned the property to establish a trust. Nevertheless, Rutherford does claim that he did represent that he owned the property. Regardless of his disclosures regarding the existence of the trust, Rutherford misses the point of the unclean hands doctrine. The issue is not whether a resulting trust requires a party to affirmatively disclose the existence of a resulting trust. Instead, the issue is whether Rutherford, as a party seeking equity, did equity himself in this matter. *See Kauffman-Harmon*, ¶ 13.

¶14 Here, the District Court concluded that Sun Merchant made its loan to Ultra Shield after Rutherford made several representations to Sun Merchant regarding the property. Specifically, these representations indicated that Ultra Shield owned the property. Although Rutherford testified at trial that he verbally informed Sun Merchant that he owned the property, the District Court noted that numerous written documents at the time of the negotiations indicated that Ultra Shield owned the property. Perhaps the most significant written document was Ultra Shield's filings with the United States Securities and Exchange Commission. In those filings, which Rutherford signed as President and Chief Executive

6

Officer, Ultra Shield listed the Montana property as assets of the company.

¶15 At best, Rutherford made conflicting representations to different parties depending on what benefitted him at the time. At worst, if he did own the property through a trust, he violated federal securities laws by knowingly representing the contrary in public securities filings. *See* 17 C.F.R. § 240.10b-5 (stating that using any national securities exchange to defraud or make any untrue statement of material fact is illegal). Regardless, Rutherford certainly did not bring his claim in equity with clean hands.

¶16 Rutherford also argues that the court misapplied the clean hands doctrine by failing to weigh the policy against unjust enrichment against the policy giving relief to a person with unclean hands. This argument confuses two separate legal concepts. Rutherford combines a statutory exception to a purchase money resulting trust with the equitable notion of clean hands.

¶17 A purchase money resulting trust does not apply in certain instances where a party makes a transfer to accomplish an illegal purpose. *See* § 72-33-218(2)(c), MCA. In such circumstances, the court weighs the policy against unjust enrichment of the transferee against the policy against giving relief to a person who has entered an illegal transaction. *See* § 72-33-218(2)(c), MCA. The doctrine of clean hands does not require such a balancing test.

¶18 For these reasons, we conclude that the clean hands doctrine bars Rutherford from asserting his claims. Because his claims are barred, we need not address any of his other issues.

¶19  Affirmed.

                                    /S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART